# IN THE SUPREME COURT OF CALIFORNIA

EPICENTRX, INC., et al.,
Petitioners,

v.

THE SUPERIOR COURT OF SAN DIEGO COUNTY,
Respondent;

EPIRX, L.P.,
Real Party in Interest.

S282521

Fourth Appellate District, Division One
D081670

San Diego County Superior Court
37-2022-00015228-CU-BT-CTL

_____

July 21, 2025

_____

Chief Justice Guerrero authored the opinion of the Court, in which Justices Corrigan, Liu, Kruger, Groban, Jenkins, and Evans concurred.

EPICENTRX, INC. v. SUPERIOR COURT

S282521


Opinion of the Court by Guerrero, C. J.


In this matter, a corporation, its controlling stockholder, and various associated individuals (collectively, defendants) were sued by the corporation's minority stockholder (plaintiff) for breach of contract, fraudulent concealment, and other claims. Defendants moved to dismiss the lawsuit on the ground of forum non conveniens. They relied on the corporation's certificate of incorporation and bylaws, which contain mandatory forum selection clauses requiring most stockholder lawsuits against the corporation and related individuals to be brought in the Delaware Court of Chancery. The trial court denied defendants' motion, and the Court of Appeal denied a petition for writ of mandate challenging the trial court's order. Both lower courts held that the forum selection clauses were unenforceable. The lower courts reasoned that, if plaintiff's claims were litigated in California, plaintiff would have a right to a jury trial, but the Delaware Court of Chancery does not recognize a similar right. In their view, because the forum selection clauses would effectively deprive plaintiff of its right to a jury trial, similar to a predispute jury trial waiver, enforcement of the clauses would be contrary to California public policy. (*EpicentRx, Inc. v. Superior Court* (2023) 95 Cal.App.5th 890, 895 (*EpicentRx*).)

We granted review to consider whether the lower courts were correct to decline enforcement of the forum selection clauses on this basis. We conclude they were not. Forum

1

selection clauses serve vital commercial purposes and should generally be enforced. At the same time, courts may properly consider whether enforcement of a forum selection clause would violate public policy. California has a strong public policy, based on the California Constitution, in favor of the right to trial by jury. But California's strong public policy protects the jury trial right in California courts, not elsewhere. It does not speak to the availability of the jury trial right in other forums. A forum selection clause is not unenforceable simply because it requires the parties to litigate in a jurisdiction that does not afford civil litigants the same right to trial by jury as litigants in California courts enjoy.

Indeed, arms-length commercial transactions between sophisticated parties may depend on the selection of a forum for dispute resolution, such as the courts of a foreign country, that does not offer a jury trial right. For example, a California business may wish to contract with a foreign business, but the foreign business will agree to the transaction only if any dispute is heard in the home forum of the foreign business. The California business may find this arrangement beneficial, notwithstanding the lack of a civil jury trial right in the foreign forum. However, under the framework adopted by the courts below, any forum selection clause designating the foreign forum would essentially be unenforceable. A foreign business may be reluctant to enter into a transaction with a California business without an enforceable forum selection clause, and the California business would be deprived of the benefit of the transaction, even though it would be willing to agree.

Nonetheless, public policy is not the only ground on which a forum selection clause may be avoided, and we do not foreclose the possibility that the extent of a civil jury trial right in the

selected forum may otherwise be relevant to the enforceability of a forum selection clause. Respect for a party's right to a jury trial is a fundamental feature of the California courts, and it is well-settled that California has a "policy favoring access to California courts by resident plaintiffs." (*Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491, 495 (*Smith*).) But the impact on a party's jury trial right does not, itself, provide grounds to decline to enforce a forum selection clause.

Here, because the Court of Appeal found the lack of a right to a jury trial in the Delaware Court of Chancery dispositive, it did not consider plaintiff's other arguments against enforcement of the forum selection clause, such as the manner of its adoption as part of the corporation's certificate of incorporation and bylaws. Although plaintiff raises the latter argument again in this court, we decline to consider it in the first instance. We therefore reverse the judgment of the Court of Appeal and remand for further proceedings in that court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The underlying lawsuit was filed by plaintiff EpiRx, L.P. against the corporation EpicentRx, Inc. (the Corporation or the Company); its controlling stockholder, Interwest Partners, L.P.; and various individuals. In its operative complaint, plaintiff alleged that the Corporation was a biotechnology company engaged in advanced clinical trials of cancer treatment medications, incorporated in Delaware, and with its principal place of business in California. Plaintiff further alleged (1) the Corporation's controlling stockholder was a California partnership with its principal place of business in California, (2) nine of the 10 individual defendants were California residents, and (3) "[t]he events described . . . and the conduct of

the parties giving rise to liability occurred primarily in the State of California, County of San Diego."

Plaintiff's complaint included the following substantive allegations: Between 2016 and 2018, plaintiff invested $5,000,000 in the Corporation. Around this time, and unbeknownst to plaintiff, various individuals associated with the Corporation and its controlling stockholder solicited and obtained money from other investors, but they did not provide those investors with any shares or other ownership interests in the Corporation. Instead, these individuals diverted the money for their own personal benefit. The misconduct of these individuals rendered the Corporation financially unfit for an initial public offering (IPO) and revealed the Corporation's promises of a " 'big exit' " for plaintiff to be false and misleading. When plaintiff discovered the misconduct, the Corporation removed plaintiff's representative from its board of directors and refused plaintiff's requests for financial and operational information.

Based on these allegations, plaintiff asserted claims for breach of contract, fraudulent concealment, promissory fraud, breach of fiduciary duty, and unfair business practices. It sought rescission and repayment of its $5,000,000 investment in the Corporation, compensatory damages in an amount to be determined at trial, punitive damages, and costs and attorney fees.

Defendants moved to dismiss plaintiff's complaint on the ground of forum non conveniens. They relied on a mandatory forum selection clause in the Corporation's certificate of incorporation, which designated the Delaware Court of Chancery as "the sole and exclusive forum for any

4

stockholder . . . to bring (i) any derivative action or proceeding brought on behalf of the Company, (ii) any action asserting a claim of breach of fiduciary duty owed by any director, officer or other employee of the Company to the Company or the Company's stockholders, (iii) any action asserting a claim against the Company, its directors, officers or employees arising pursuant to any provision of the [Delaware General Corporation Law] or the Company's certificate of incorporation or bylaws or (iv) any action asserting a claim against the Company, its directors, officers or employees governed by the internal affairs doctrine . . . ." They also cited a similar mandatory forum selection clause in the Corporation's bylaws. Defendants argued that the forum selection clause in the Corporation's certificate of incorporation was facially valid, covered each of plaintiff's claims, and should be enforced.[1]

Plaintiff opposed the motion. It disagreed that the forum selection clause applied to its claims, and to the extent its claim for breach of fiduciary duty was impacted, plaintiff offered to dismiss it. Plaintiff also argued the forum selection clause was unfair and unreasonable because the Corporation added the clause after the misconduct alleged in plaintiff's complaint came to light, plaintiff did not agree to the clause, and some defendants were not subject to suit in Delaware. Plaintiff contended that the litigation should remain in California

---

[1] Because the forum selection clause in the Corporation's certificate of incorporation is broader than the similar clause in the Corporation's bylaws, and the parties do not otherwise distinguish them, we focus on the forum selection clause in the certificate of incorporation and refer to a forum selection "clause" in the singular.

because other litigation involving the Corporation was pending in state and federal courts there.

In a tentative ruling, the trial court proposed to deny the motion, but on different grounds. The court noted that a jury trial was unavailable in the Delaware Court of Chancery, and thus the court believed the forum selection clause was "a *de facto* predispute waiver of the right to a trial by jury." Because California law does not allow predispute jury trial waivers (see *Grafton Partners v. Superior Court* (2005) 36 Cal.4th 944, 956 (*Grafton Partners*)), the court believed California public policy would prohibit enforcement of the forum selection clause.

At a hearing, following argument on the tentative ruling, the trial court granted defendants' request to submit supplemental briefing on the impact of California public policy on the forum selection clause. In their supplemental briefing, defendants primarily argued that plaintiff's claims were equitable, not legal, and therefore would not be tried before a jury even in California. Plaintiff therefore had no right to a jury trial in California that would be diminished by litigation in the Delaware Court of Chancery. Defendants also argued that the internal affairs doctrine required that Delaware law be applied to the forum selection clause, and Delaware law would require that it be enforced.[2] Plaintiff disagreed that a jury trial was

---

[2] "Under the internal affairs doctrine, California courts recognize that the law of the state of incorporation applies to an action that concerns the 'internal affairs' of corporations. [Citation.] '[I]nternal affairs' are 'matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders.' " (*Wong v. Restoration Robotics, Inc.* (2022) 78 Cal.App.5th 48, 74–75; see Corp. Code, § 2116.)

unavailable on its claims, particularly its claims for breach of contract and fraudulent concealment, and it further disagreed the internal affairs doctrine was relevant.

After an additional hearing, the court denied defendants' motion to dismiss. It determined that at least some of plaintiff's claims were legal, not equitable, and therefore would be tried before a jury in California. Because the forum selection clause would effectively deprive plaintiff of that jury trial right, the court found that the clause ran afoul of California's public policy against predispute jury trial waivers and was unenforceable.

Defendants filed a petition for writ of mandate challenging the order denying their motion to dismiss. They contended that the forum selection clause did not run afoul of California public policy because it was not an express waiver of a jury trial. It was, instead, an agreement to avoid the California forum altogether. Defendants further contended that the Delaware forum selection clause was reasonable, such clauses are commonly adopted for reasons unrelated to the availability of a jury trial, and the internal affairs doctrine required that the clause be enforced.

The Court of Appeal issued an order to show cause, but it ultimately denied relief. (*EpicentRx*, *supra*, 95 Cal.App.5th at p. 895.) It assumed that the forum selection clauses were valid under Delaware law, and it noted that plaintiff did not argue otherwise. (*Id.* at p. 898.) It held, however, that California law should apply to the enforceability of the clauses. (*Id.* at pp. 898–899.)

To determine enforceability, the Court of Appeal began with the burden of proof. It observed that " '[t]he party opposing enforcement of a forum selection clause ordinarily "bears the

'substantial' burden of proving why it should *not* be enforced." ' "
(*EpicentRx*, *supra*, 95 Cal.App.5th at p. 900.)  But it recognized
a line of precedents holding that the burden " 'is reversed when
the claims at issue are based on unwaivable rights created by
California statutes.  In that situation, the party seeking to
enforce the forum selection clause bears the burden to show
litigating the claims in the contractually designated forum "will
not diminish in any way the substantive rights
afforded . . . under California law." ' "  (*Ibid*.)  It further
recognized that these precedents had been extended to the jury
trial right at issue here.  (*Id*. at p. 902, citing *Handoush v. Lease
Finance Group, LLC* (2019) 41 Cal.App.5th 729 (*Handoush*).)

The Court of Appeal explained that plaintiff "demanded a
jury trial and, on appeal, there is no dispute that it would be
entitled to a jury trial in California for at least some of its
claims."  (*EpicentRx*, *supra*, 95 Cal.App.5th at p. 904.)  But
plaintiff "would not be entitled to a jury trial in the Delaware
Court of Chancery, which sits as a court of equity."  (*Ibid*.)  The
Court of Appeal therefore held, following *Handoush*, that
shifting the burden to defendants was appropriate:  " '[B]ecause
enforcement of the forum selection clause here has the potential
to contravene a fundamental California policy of zealously
guarding the inviolate right to a jury trial, which is unwaivable
by predispute agreements, [the defendants] bear[] the burden of
showing that litigation in [Delaware Chancery Court] "will not
diminish in any way [plaintiff's] substantive rights . . . under
California law." ' "  (*Id*. at p. 905, quoting *Handoush*, *supra*,
41 Cal.App.5th at p. 739.)  Because defendants did not carry
their burden of showing that plaintiff's jury trial right would be
upheld in the Delaware Court of Chancery, the Court of Appeal
held that the trial court did not err by declining to enforce the

forum selection clause and denying defendants' motion to dismiss. (*EpicentRx*, at p. 905.)**³**

Several defendants, including the Corporation, petitioned this court for review. They framed the issue to be reviewed as follows: "Did the Court of Appeal correctly hold that this action must remain in California despite the contractual forum selection clause in [the Corporation's] bylaws and certificate of incorporation, which calls for this action to be filed in the Delaware Court of Chancery?" We granted the petition for review.

## II. DISCUSSION

### A. Forum Non Conveniens Generally

"Forum non conveniens is an equitable doctrine invoking the discretionary power of a court to decline to exercise the jurisdiction it has over a transitory cause of action when it

---

**³** The Court of Appeal found that defendants had forfeited several arguments by failing to timely assert them. For example, although defendants had argued in the trial court that plaintiff would not be entitled to a jury trial in California on any of its claims, they did not raise this argument in their briefing. (*EpicentRx*, *supra*, 95 Cal.App.5th at p. 904, fn. 7.) Defendants also attempted to raise several new arguments for the first time in a petition for rehearing, including that "the burden-shifting framework . . . is inapplicable because it purportedly applies only to California residents and [plaintiff] has not shown that it is in fact a California resident" and "proceeding with this case in the Delaware Court of Chancery would not deprive [plaintiff] of a jury trial because, in some circumstances, the Chancery Court may order factual issues to be determined by a jury." (*Id.* at p. 909, fn. 9.) The Court of Appeal declined to address these arguments. (*Ibid.*) To the extent defendants raise these arguments again in this court, we likewise decline to consider them in the first instance. (Cal. Rules of Court, rule 8.500(c)(1).)

believes that the action may be more appropriately and justly tried elsewhere." (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 751 (*Stangvik*).) Thus, as the relevant statutes provide, "When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just." (Code Civ. Proc., § 410.30, subd. (a); see *id.*, § 418.10, subd. (a)(2) [a defendant may file a motion "[t]o stay or dismiss the action on the ground of inconvenient forum"].)

When a motion invoking this doctrine is not based on a forum selection clause, a court's consideration of the motion is guided by well-settled principles: "In determining whether to grant a motion based on forum non conveniens, a court must first determine whether the alternate forum is a 'suitable' place for trial. If it is, the next step is to consider the private interests of the litigants and the interests of the public in retaining the action for trial in California. The private interest factors are those that make trial and the enforceability of the ensuing judgment expeditious and relatively inexpensive, such as the ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the availability of compulsory process for attendance of unwilling witnesses. The public interest factors include avoidance of overburdening local courts with congested calendars, protecting the interests of potential jurors so that they are not called upon to decide cases in which the local community has little concern, and weighing the competing interests of California and the alternate jurisdiction in the litigation." (*Stangvik, supra*, 54 Cal.3d at p. 751.)

"An alternative forum is suitable if it has jurisdiction and the action in that forum will not be barred by the statute of

limitations." (*Guimei v. General Electric Co.* (2009) 172 Cal.App.4th 689, 696.) "That the law is less favorable to the plaintiffs in the alternative forum, or that recovery would be more difficult if not impossible, is irrelevant to the determination whether the forum is suitable unless 'the alternative forum provides no remedy at all.' " (*Ibid.*) "The 'no remedy at all' exception applies 'only in "rare circumstances," such as where the alternative forum is a foreign country whose courts are ruled by a dictatorship, so that there is no independent judiciary or due process of law.' " (*Id.* at p. 697.)

Consistent with this approach, we have held that the fact that "the law of the forum state is more favorable to the plaintiff than that of the alternate jurisdiction" — including the availability of a jury trial — should not be accorded any weight in the traditional forum non conveniens balance of interests, as long as some remedy is afforded in the alternate jurisdiction. (*Stangvik, supra,* 54 Cal.3d at p. 753; see *id.* at p. 753, fn. 5.) Similarly, in *Investors Equity Life Holding Co. v. Schmidt* (2011) 195 Cal.App.4th 1519, 1524, the Court of Appeal affirmed an order staying a California action on the ground of forum non conveniens. The court rejected plaintiff's arguments that the lack of a jury trial right in Hawaii rendered it unsuitable as a forum or tipped the balance of factors in favor of California. (*Id.* at pp. 1530, 1535.)

More important, generally, is whether the plaintiff is a California resident. In this context, a California resident's choice of a California forum "should rarely be disturbed unless the balance is strongly in favor of the defendant." (*Stangvik, supra,* 54 Cal.3d at p. 754.) A California resident's choice of a California forum is "presumed to be convenient," and California "has a strong interest in assuring its own residents an adequate

forum for the redress of grievances." (*Id.* at pp. 754–755.) Nonetheless, "the trial court retains a flexible power to consider and weigh all factors relevant to determining which forum is the more convenient, and to stay actions by true California residents when it finds that the foreign forum is preferable." (*Archibald v. Cinerama Hotels* (1976) 15 Cal.3d 853, 860; see *Stangvik*, at p. 755 [dismissal allowed as well].)

### B. Forum Selection Clauses

This approach changes significantly if the parties have agreed to resolve their disputes in a non-California forum. We have observed, "No satisfying reason of public policy has been suggested why enforcement should be denied a forum selection clause appearing in a contract entered into freely and voluntarily by parties who have negotiated at arm's length." (*Smith*, *supra*, 17 Cal.3d at pp. 495–496.) While still a matter of trial court discretion under the doctrine of forum non conveniens, "forum selection clauses are valid and may be given effect, in the court's discretion and in the absence of a showing that enforcement of such a clause would be unreasonable." (*Id.* p. 496.) We held that a party resisting enforcement of a forum selection clause cannot carry its burden of demonstrating unreasonableness by relying on "the factors of inconvenience and expense" of the selected forum. (*Ibid.*) " 'Mere inconvenience or additional expense is not the test of unreasonableness since it may be assumed that the plaintiff received under the contract consideration for these things.' " (*Ibid.*)

Even a California resident will normally be bound by a forum selection clause. As this court explained almost 50 years ago, "although we have acknowledged a policy favoring access to

California courts by resident plaintiffs [citation], we likewise conclude that the policy is satisfied in those cases where, as here, a plaintiff has freely and voluntarily negotiated away his right to a California forum. In so holding we are in accord with the modern trend which favors enforceability of such forum selection clauses." (*Smith*, *supra*, 17 Cal.3d at p. 495.)

As an example of this modern trend, we cited the United States Supreme Court's then-recent opinion in *The Bremen v. Zapata Off-Shore Co.* (1972) 407 U.S. 1 (*The Bremen*). That case involved a forum selection clause in "a freely negotiated international commercial transaction." (*Id.* at p. 17.) The high court held that the forum selection clause should be enforced unless the party resisting its application "could clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." (*Id.* at p. 15.) The court explained, "There are compelling reasons why a freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power, such as that involved here, should be given full effect." (*Id.* at pp. 12–13, fn. omitted.) An agreed-upon forum brings "vital certainty" to the parties and may provide a neutral and experienced venue for resolution of any disputes. (*Id.* at p. 17.)

### C. Forum Selection and Public Policy

Since *Smith*, the Courts of Appeal have considered the enforceability of forum selection clauses in a wide variety of circumstances. As the court below recognized, such clauses "typically will be enforced, absent a showing that enforcement of the forum selection clause would be unfair or unreasonable. [Citations.] 'This favorable treatment is attributed to our law's

devotion to the concept of one's free right to contract, and flows from the important practical effect such contractual rights have on commerce generally.' " (*EpicentRx*, *supra*, 95 Cal.App.5th at pp. 899–900.)

One exception to this general rule of enforceability is grounded in public policy. California courts have held that "a forum selection clause will not be enforced if to do so would bring about a result contrary to the public policy of this state." (*Intershop Communications AG v. Superior Court* (2002) 104 Cal.App.4th 191, 200 (*Intershop*); cf. *Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459, 466 [considering, in the analogous context of choice of law clauses, whether enforcing such a clause would be "contrary to this state's fundamental policy"].) In *The Bremen*, the United States Supreme Court likewise emphasized that a court may decline to enforce a forum selection clause where "selection of a remote forum to apply differing foreign law to an essentially American controversy might contravene an important public policy of the forum." (*The Bremen*, *supra*, 407 U.S. at p. 17.) Thus, the high court held, "A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." (*Id*. at p. 15.) Federal courts continue to recognize this public policy exception to the enforcement of a forum selection clause. (See, e.g., *Lee v. Fisher* (9th Cir. 2023) 70 F.4th 1129, 1143; *Lakeside Surfaces, Inc. v. Cambria Co., LLC* (6th Cir. 2021) 16 F.4th 209, 220–221; *Davis v. Oasis Legal Finance Operating Co., LLC* (11th Cir. 2019) 936 F.3d 1174, 1181.)

As noted, we referred to public policy in *Smith*, explaining that "[n]o satisfying reason of public policy has been suggested

14

why enforcement should be denied a forum selection clause appearing in a contract entered into freely and voluntarily by parties who have negotiated at arm's length." (*Smith, supra,* 17 Cal.3d at pp. 495–496.) But our statement was potentially ambiguous regarding the existence of a public policy exception to the enforcement of any particular forum selection clause. Nonetheless, it appears self-evident that a court may refuse to enforce a contractual forum selection clause on public policy grounds, just as it may refuse to enforce other contractual provisions that violate a fundamental public policy of California. (*Kreamer v. Earl* (1891) 91 Cal. 112, 117; see *City of Santa Barbara v. Superior Court* (2007) 41 Cal.4th 747, 777, fn. 53 (*City of Santa Barbara*) ["It is well established that our courts, like those of other states, may, in appropriate circumstances, void contracts on the basis of public policy"]; see also Rest.2d Contracts, § 178, subd. (1) ["A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms"].) We therefore confirm that courts should refuse to enforce a forum selection clause if its enforcement would be contrary to a strong or fundamental public policy of this state.[4]

---

[4] We have no occasion in this matter to consider other potential grounds for declining to enforce a forum selection clause. (See, e.g., *Cal-State Business Products & Services, Inc. v. Ricoh* (1993) 12 Cal.App.4th 1666, 1679 [discussing exceptions where the clause " 'is the result of overreaching or of the unfair use of unequal bargaining power,' " the forum " 'would be a seriously inconvenient one,' " or the clause has no "rational basis in light of the facts underlying the transaction"].)

This exception, however, does not give courts unbounded discretion to decline to enforce otherwise valid forum selection clauses. In general, courts are reluctant to decline enforcement of contractual provisions on public policy grounds, especially where no statute or constitutional provision directly speaks to the issue. " 'Freedom of contract is an important principle, and courts should not blithely apply public policy reasons to void contract provisions.' " (*Kaufman v. Goldman* (2011) 195 Cal.App.4th 734, 745.) " ' "The power of the courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt." [Citation.] "Before a court should determine a transaction which has been entered into in good faith, stipulating for nothing that is *malum in se*, to be void as contravening the policy of the statute, it should be satisfied that the advantage to accrue to the public for so holding is certain and substantial, not theoretical or problematical." [Citation.] "No court ought to refuse its aid to enforce a contract on doubtful and uncertain grounds. The burden is on the [opposing party] to show that its enforcement would be in violation of the settled public policy of this state, or injurious to the morals of its people." ' " (*Jensen v. Traders & General Ins. Co.* (1959) 52 Cal.2d 786, 794–795; accord, *City of Santa Barbara, supra*, 41 Cal.4th at p. 777, fn. 53.)

Beyond the general public policy interest in enforcing any valid contract, the enforcement of forum selection clauses in specific circumstances is especially important. As the high court explained in *The Bremen*, "There are compelling reasons why a freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power, such

as that involved here, should be given full effect.  In this case, for example, we are concerned with a far from routine transaction between companies of two different nations contemplating the tow of an extremely costly piece of equipment from Louisiana across the Gulf of Mexico and the Atlantic Ocean, through the Mediterranean Sea to its final destination in the Adriatic Sea. . . .  It cannot be doubted for a moment that the parties sought to provide for a neutral forum for the resolution of any disputes arising during the tow.  Manifestly much uncertainty and possibly great inconvenience to both parties could arise if a suit could be maintained in any jurisdiction in which an accident might occur or if jurisdiction were left to any place where [the ship or defendant] might happen to be found.  The elimination of all such uncertainties by agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce, and contracting.  There is strong evidence that the forum clause was a vital part of the agreement, and it would be unrealistic to think that the parties did not conduct their negotiations, including fixing the monetary terms, with the consequences of the forum clause figuring prominently in their calculations." (*The Bremen*, *supra*, 407 U.S. at pp. 12–14, fns. omitted.)  As noted, we too recognized the "modern trend" favoring enforceability of forum selection clauses soon afterward.  (*Smith*, *supra*, 17 Cal.3d at p. 495.)  Although our case involved a domestic forum selection clause, we cited *The Bremen* with approval.  (*Ibid*.)

More recently, the high court emphasized the importance of enforcing forum selection clauses.  The court explained, "The 'enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.' " (*Atlantic Marine Constr.*

*Co. v. United States Dist. Court for Western Dist. of Tex.* (2013) 571 U.S. 49, 63.) "When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations.  A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place.  In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain." (*Id.* at p. 66.)

Nonetheless, the Legislature has identified a number of circumstances in which enforcement of a forum selection clause would violate public policy.  For example, Business and Professions Code section 20040.5 prohibits forum selection clauses in California franchise agreements:  "A provision in a franchise agreement restricting venue to a forum outside this state is void with respect to any claim arising under or relating to a franchise agreement involving a franchise business operating within this state."  As another example, California Uniform Commercial Code section 10106, subdivision (b) prohibits forum selection clauses in consumer personal property lease agreements:  "If the judicial forum chosen by the parties to a consumer lease is in a county other than the county in which the lessee in fact signed the lease, the county in which the lessee resides at the commencement of the action, the county in which the lessee resided at the time the lease contract became enforceable, or the county in which the goods are permanently stored, the choice is not enforceable."  Other examples include Code of Civil Procedure section 410.42, subdivision (a) (construction subcontracts), Code of Civil Procedure

section 116.225 (goods and services under small claims court jurisdiction), and Insurance Code section 10138, subdivision (a)(9) (structured settlement transfer agreements).

The Legislature has also enacted Labor Code section 925, which generally prohibits an employer from requiring an employee who primarily resides and works in California to agree to a forum selection clause that would require the employee "to adjudicate outside of California a claim arising in California." (Lab. Code, § 925, subd. (a)(1).)  The section does not apply, however, "to a contract with an employee who is in fact individually represented by legal counsel in negotiating the terms of an agreement to designate either the venue or forum in which a controversy arising from the employment contract may be adjudicated."  (*Id*., subd. (e).)  Labor Code section 432.6, subdivision (a) similarly prohibits any person from requiring an employee or applicant for employment to waive "any right, forum, or procedure for a violation of any provision of the California Fair Employment and Housing Act."

Federal and state courts have applied these statutes to decline enforcement of forum selection clauses on public policy grounds.  (See, e.g., *Jones v. GNC Franchising, Inc.* (9th Cir. 2000) 211 F.3d 495, 498 [franchise statute "expresses a strong public policy of the State of California to protect California franchisees from the expense, inconvenience, and possible prejudice of litigating in a non-California venue"]; *Midwest Motor Supply Co. v. Superior Court* (2020) 56 Cal.App.5th 702, 715 [forum selection clause voidable by employee]; *Vita Planning & Landscape Architecture, Inc. v. HKS Architects, Inc.* (2015) 240 Cal.App.4th 763, 777 [forum selection clause in construction subcontract unenforceable].)

### D. Public Policy and the Civil Jury Trial Right

Plaintiff does not contend that any statute or constitutional provision expressly prohibits enforcement of the forum selection clause at issue here. Instead, plaintiff points to California's strong public policy in favor of the right to trial by jury, and it argues that this public policy requires courts to decline to enforce a forum selection clause that would impair a party's right to trial by jury that it would otherwise enjoy in California. In other words, plaintiff maintains that a court cannot enforce a forum selection clause that would require a party to litigate in a forum, like the Delaware Court of Chancery, that does not afford the party the same right to a jury trial as in California. We disagree. Even where enforcement of a forum selection clause may effectively deprive a plaintiff of the right to trial by jury, this circumstance alone does not provide a basis to avoid its enforcement.

As an initial matter, plaintiff is correct that California public policy supports the right to trial by jury where applicable. The right itself is guaranteed by the California Constitution: "Trial by jury is an inviolate right and shall be secured to all." (Cal. Const., art. I, § 16; see generally *Nationwide Biweekly Administration, Inc. v. Superior Court* (2020) 9 Cal.5th 279, 315.) It is also subject to waiver. In civil cases, "a jury may be waived by the consent of the parties expressed as prescribed by statute." (Cal. Const., art. I, § 16.)

The relevant statute confirms both the right and its waivability: "The right to a trial by jury as declared by Section 16 of Article I of the California Constitution shall be preserved to the parties inviolate." (Code Civ. Proc., § 631, subd. (a).) In civil cases, "a jury may only be waived" as specified

by the statute. (*Ibid.*) The circumstances identified by statute as constituting a permissible waiver include "failing to appear at the trial," "written consent filed with the clerk or the judge," "oral consent, in open court, entered in the minutes," "failing to announce that a jury is required" by specified times, and failing to pay or deposit jury fees. (*Id.*, subd. (f).)

It is apparent from these provisions that they concern the right to a jury trial in California courts, not elsewhere. "They form part of a considered procedural scheme intended to create a balanced adversarial system and a fair system of public administration of justice." (*Grafton Partners*, *supra*, 36 Cal.4th at p. 964.) They "address a specific procedural question, i.e., which cases will be tried by jury in California courts. Those protected, by definition, are litigants in the California courts." (*Rincon EV Realty LLC v. CP III Rincon Towers, Inc.* (2017) 8 Cal.App.5th 1, 18 (*Rincon EV Realty*).) When litigation proceeds in another forum, "the jury trial right the parties enjoy in our courts would not travel with them." (*Ibid.*) Instead, "[t]he basic rule is well settled that matters of procedure are governed by the law of the forum," including the right to trial by jury. (3 Witkin, Cal. Procedure (6th ed. 2025) Actions, § 50.) Thus, "the law of the forum determines whether an issue of fact shall be tried by the court or by a jury." (*Cobb v. Lawrence* (1942) 54 Cal.App.2d 630, 633; accord, Rest.2d Conflict of Laws, § 129.) The California Constitution and related statutory provisions do not reflect any public policy regarding the right to a civil jury trial in other forums.

Plaintiff analogizes the forum selection clause to a predispute jury trial waiver, which we held was unenforceable in *Grafton Partners*, *supra*, 36 Cal.4th at page 950. This analogy is inapt. A forum selection clause is not equivalent to a

predispute jury trial waiver. The former reflects *where* a dispute will be litigated, while the latter reflects *how* it will be litigated. *Grafton Partners* considered the circumstances in which California courts may enforce a jury trial waiver. It did not consider whether parties may agree to avoid the California forum altogether. Although the practical effect of the forum selection clause may be that plaintiff's claims are not heard by a jury, California public policy does not require invalidation of the forum selection clause in all circumstances for that reason alone.[5]

Indeed, any litigant in the California courts, no matter their domicile, has the right to a civil jury trial. The constitutional right applies to all such litigants equally. This public policy — "protection of the right to jury trial for litigants in California courts unless they waive the right in a manner prescribed by the Legislature" — "is central to California's system for resolving civil cases, for all litigants." (*Rincon EV Realty*, *supra*, 8 Cal.App.5th at p. 17.) Under plaintiff's theory, any litigant who can satisfy California's jurisdiction and venue requirements could maintain an action in California so long as the litigant invokes the right to a jury trial, notwithstanding an

_____

[5] Our lower courts have recognized the utility of forum selection clauses, even in favor of foreign jurisdictions without a jury trial right. For example, in *Intershop*, *supra*, 104 Cal.App.4th at page 200, the court explained that enforcement of a German forum selection clause "makes sense under the circumstances here, where the options are for stock in a German corporation subject to German securities regulations and where the parties agreed that German law would apply." No party raised the lack of a civil jury trial right in Germany. (See 2 Tinsley, Digest of Commercial Laws of the World (2025) § 19A:80 ["There is no jury trial in Germany"].)

agreement to litigate its claims in a foreign forum, if the litigant could show its jury trial rights in the foreign forum would be impaired. Because civil jury trials are highly atypical outside the United States, California would become a magnet for such foreign disputes — again, notwithstanding the fact that the litigants have expressly agreed to submit to a foreign forum. (Cf. *Furda v. Superior Court* (1984) 161 Cal.App.3d 418, 428 (conc. opn. of Crosby, J.) [observing, in a similar context, "if garden variety fraud were sufficient of itself to defeat a forum selection clause, the rule of [*Smith*] would be quickly swallowed by that exception"].) California public policy does not require such a result.

Plaintiff relies on *Handoush, supra*, 41 Cal.App.5th 729, as did the Court of Appeal below. (*EpicentRx, supra*, 95 Cal.App.5th at pp. 902–904.) In that case, a plaintiff entered into a lease agreement containing a forum selection clause (in favor of New York), a choice of law clause (in favor of New York), and an explicit predispute jury trial waiver. (*Handoush*, at p. 732.) Plaintiff filed suit in California for fraud and other claims related to the agreement, and the defendant moved to dismiss based on the forum selection clause. (*Ibid.*) The trial court granted the motion, and plaintiff appealed. (*Id.* at p. 734.) On appeal, the court adopted a framework that has developed in the Courts of Appeal for analyzing forum selection clauses that may impact a party's unwaivable rights under California statutory law. (*Ibid.*) Under this framework, the usual burden of proof is reversed, and " 'the party seeking to enforce the forum selection clause bears the burden to show litigating the claims in the contractually designated forum "will not diminish in any way the substantive rights afforded . . . under California law." ' " (*Ibid.*; see *Verdugo v. Alliantgroup, L.P.* (2015)

237 Cal.App.4th 141, 157 (*Verdugo*); *America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1, 10 (*America Online*); *Wimsatt v. Beverly Hills Weight etc. Internat., Inc.* (1995) 32 Cal.App.4th 1511, 1522 (*Wimsatt*).)

For example, in *Wimsatt*, the plaintiffs were California franchisees who brought claims under California's Franchise Investment Law (FIL; Corp. Code, § 31001 et seq.) against their franchisor. (*Wimsatt, supra,* 32 Cal.App.4th at p. 1513.) The FIL contains an antiwaiver provision voiding any contractual term purporting to require a franchisee to "waive compliance with any provision of this law or any rule or order hereunder." (Corp. Code, § 31512.) *Wimsatt* explained that a forum selection clause (in favor of Virginia) "carrie[d] the potential to contravene this statute by placing litigation in a forum in which there is no guaranty that California's franchise laws will be applied to a franchisee's claims." (*Wimsatt*, at p. 1520.) The court reasoned that, in light of the Legislature's "special solicitude for franchisees in their dealings with franchisors" and "the need to prevent the easy circumvention of the antiwaiver statute," the usual burdens should be reversed. (*Id.* at pp. 1521–1522.) *Wimsatt* held that, in order to enforce the forum selection clause, the *franchisor* must show that "litigation in the contract forum will not diminish in any way the substantive rights afforded California franchisees under California law." (*Id.* at p. 1522.) This special rule was needed, the court reasoned, to resolve "the problem of the interaction between a forum selection clause and certain specific protections enacted to benefit in-state investors" in this type of case. (*Id.* at p. 1523.)

In *America Online*, a plaintiff brought claims against an internet service provider, including under California's Consumers Legal Remedies Act (CLRA; Civ. Code, § 1750 et

seq.).  (*America Online*, *supra*, 90 Cal.App.4th at p. 5.)  The plaintiff's agreement with the provider contained a forum selection clause and choice of law clause in favor of Virginia.  (*Id.* at p. 6.)  The *America Online* court held that these provisions ran afoul of the CLRA's antiwaiver provision (Civ. Code, § 1751) because they would force plaintiffs to allege claims under Virginia's scheme for consumer protection, which was far less favorable to plaintiffs than the CLRA.  (*American Online*, at p. 15.)

*Verdugo*, in turn, involved a plaintiff who brought wage and hour claims against her employer.  (*Verdugo*, *supra*, 237 Cal.App.4th at p. 144.)  An employment agreement included a forum selection clause and choice of law clause in favor of Texas.  (*Id.* at p. 146.)  The *Verdugo* court held that these clauses were unenforceable because "all of [the plaintiff's] claims are based on her statutory rights under the Labor Code" (*id.* at p. 150), those rights are unwaivable (*ibid.*, citing Lab. Code, § 219, subd. (a)), and defendant "fail[ed] to cite any Texas authority granting [the plaintiff] comparable remedies for the violation of these rights" (*Verdugo*, at p. 161).

Turning back to *Handoush*, although it recognized that the jury trial right at issue was not "based upon a statutory scheme which includes an antiwaiver provision like the claims at issue in *Wimsatt*, *America Online*, and *Verdugo*," it nonetheless applied the same principles.  (*Handoush*, *supra*, 41 Cal.App.5th at p. 736.)  *Handoush* reasoned that the right to a jury trial is "unwaivable in predispute contracts under California law," similar to the statutory schemes in prior authorities.  (*Ibid.*)  Moreover, even if the right to a jury trial were not strictly a substantive right, *Handoush* believed it nonetheless is " ' "intimately bound up with the state's

substantive decision making" ' and it ' "serve[s] substantive state policies" ' of preserving the ' "right to a jury trial in the strongest possible terms" [citation], an interest the California Constitution zealously guards [citation].' " (*Id.* at p. 739, quoting *In re County of Orange* (9th Cir. 2015) 784 F.3d 520, 530 (*County of Orange*).)

In light of this belief, and similar to *Wimsatt*, *America Online*, and *Verdugo*, the *Handoush* court reversed the usual burden of proof and proceeded to examine whether enforcement of the forum selection clause would threaten to diminish the unwaivable right allegedly at issue, i.e., plaintiff's California right to a jury trial. (*Handoush*, *supra*, 41 Cal.App.5th at p. 739.) *Handoush* held that it would: "Because New York permits predispute jury trial waivers, and California law does not, enforcing the forum selection clause has the potential to operate as a waiver of a right the Legislature and our high court have declared unwaivable." (*Ibid.*) It therefore reversed the trial court's order dismissing the action. (*Id.* at p. 740.)

We note, as an initial matter, that the forum selection clause in *Handoush* was coupled with a choice of law clause and an express jury trial waiver. It is therefore unlike the bare forum selection clause at issue here. Nonetheless, even on its own terms, *Handoush*'s reasoning is unpersuasive. The California right to a jury trial is unlike the substantive rights at issue in *Wimsatt*, *America Online*, and *Verdugo*.

First, as discussed, the civil jury trial right is a procedural right, not a substantive one. Although substance and procedure " 'are not legal concepts of invariable content' " (*Grant v. McAuliffe* (1953) 41 Cal.2d 859, 865), it is clear that the right to a jury trial primarily concerns the mode or manner of litigation,

whereas the rights at issue in *Wimsatt*, *America Online*, and *Verdugo* primarily concerned the plaintiffs' underlying legal rights to obtain relief under California statutory law. The waiver of the jury trial right is likewise "clearly a procedural matter" determined by the law of the local forum. (*World Wide Imports, Inc. v. Bartel* (1983) 145 Cal.App.3d 1006, 1013; see *Grafton Partners*, *supra*, 36 Cal.4th at p. 964 [statutory jury waiver and forfeiture provisions "form part of a considered *procedural* scheme" (italics added)].)

Second, the statutory provisions at issue in these prior cases are unlike the provisions governing a party's right to a civil jury trial. The FIL section in *Wimsatt* provides, "Any condition, stipulation or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of this law or any rule or order hereunder is void." (Corp. Code, § 31512.) The CLRA section in *America Online* provides, "Any waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable and void." (Civ. Code, § 1751.) Last, the Labor Code section in *Verdugo* provides, in relevant part, "no provision of this article can in any way be contravened or set aside by a private agreement, whether written, oral, or implied." (Lab. Code, § 219, subd. (a).) Each of these statutes explicitly or implicitly voids a private agreement that waives a substantive statutory right.

By contrast, for the California jury trial right, the relevant constitutional provision states, in relevant part, "Trial by jury is an inviolate right and shall be secured to all . . . . In a civil cause a jury may be waived by the consent of the parties expressed as prescribed by statute." (Cal. Const., art. I, § 16.) The relevant statutory provision states, "The right to a trial by jury as declared by Section 16 of Article I of the California Constitution

shall be preserved to the parties inviolate.  In civil cases, a jury may only be waived pursuant to subdivision (f)."  (Code Civ. Proc., § 631, subd. (a).)  These provisions do not purport to void jury trial waivers that do not conform to the statute or to prohibit parties from agreeing to them.  They simply state that such waivers will not be enforced in California.  The limitations on waiver are limitations on courts operating in this forum.  They do not announce a public policy against predispute jury trial waivers writ large, untethered to their enforcement in a California forum.  (See *Grafton Partners*, *supra*, 36 Cal.4th at p. 967 [emphasizing that "it is for the Legislature, not this court, to determine whether, and under what circumstances, a predispute waiver of jury trial will be enforceable in this state"].)  While California courts cannot recognize a predispute jury trial waiver as valid, neither the Constitution nor the relevant statutes declare all such waivers void.[6]

---

[6]    These observations concerning the jury trial right are consistent with the federal appellate court's reasoning and conclusion in *County of Orange*, *supra*, 784 F.3d 520.  The issue in that case was "whether, under *Erie R. Co. v. Tompkins*, 304 U.S. 64 . . . (1938), a federal court sitting in diversity applies state or federal law to determine the validity of a pre-dispute jury trial waiver contained in a contract governed by California law."  (*Id*. at p. 523.)  In general, under *Erie*, " 'federal courts sitting in diversity apply state substantive law and federal procedural law.' "  (*Id*. at p. 527.)  Under this framework, "the right to a jury trial is a federal procedural issue controlled by federal law." (*Id*. at p. 528.)  Notwithstanding this principle, the federal court believed California's rule against predispute jury trial waivers had both substantive and procedural aspects.  "On the one hand, rules dictating when a party waives its right to a jury trial are procedural . . . .  California's rule that pre-dispute jury trial waivers are unenforceable is not a rule that creates

California has a strong public policy in favor of the right to a jury trial and against predispute waivers of that right. But California does not have a strong public policy against forum selection clauses or agreements to litigate in a jurisdiction that does not recognize the same civil jury trial right. The considerations surrounding each policy are distinct, and one does not necessarily follow from the other. The Court of Appeal below, and *Handoush* before it, erred by treating them as equivalents. We therefore reverse the judgment of the Court of

---

'rights and obligations' for the parties to a contract, [citation], nor is it a rule that dictates the substance of a potential award, [citation]. Rather, the rule — which allocates tasks between a judge and a jury — describes 'merely a form and mode of enforcing' the law." (*Id.* at p. 529.) "On the other hand, California's rule is substantive. It is a state rule of contract interpretation that furthers the state constitutional policy favoring jury trials, [citation], and rules of contract interpretation and construction are plainly substantive under *Erie*." (*Id.* at p. 530.)

*County of Orange* found it unnecessary to resolve this ambiguity. Even assuming the rule was "primarily procedural," the court held that "federal courts sitting in diversity may [not] disregard it." (*County of Orange, supra*, 784 F.3d at p. 530.) It determined there was "no federal rule that governs the validity of a pre-dispute jury trial waiver when state law is more protective than federal law of the jury trial right," and thus "*Erie*'s federalism principle directs us to import state law as the federal rule rather than construct a new federal common law rule." (*Id.* at p. 531.)

Although *County of Orange* involved a federal rather than a California forum, its adoption of the rule against predispute jury trial waivers reflects the federal courts' deference to certain forum state principles when sitting in diversity. It does not provide support for a broader California public policy against predispute jury trial waivers, regardless of forum.

Appeal and remand for further proceedings consistent with this opinion.[7]

### E. Additional Issues

As noted, we consider in this matter only whether the lower courts were correct to decline enforcement of the forum selection clause on public policy grounds based solely on the clause's impact on plaintiff's jury trial right. We need not and do not consider whether California's strong public policy in favor of the right to a jury trial might be relevant, in combination with other factors, to the enforceability of a forum selection clause in other contexts or under other theories. Nothing in our opinion today detracts from our long-standing recognition that the right to a jury trial is a fundamental feature of the California forum. "Our Constitution treats the historical right to a jury resolution of disputes that have been brought to a judicial forum as fundamental . . . ." (*Grafton Partners*, *supra*, 36 Cal.4th at p. 951.) Protection of that right "is a core aspect of how California has chosen to adjudicate cases within its civil justice system as a whole." (*Rincon EV Realty*, *supra*, 8 Cal.App.5th at p. 16.)

Finally, in addition to the potential impact on plaintiff's jury trial right, plaintiff challenges enforcement of the forum selection clause based on its manner of adoption as part of the

---

[7] We disapprove *Handoush v. Lease Finance Group, LLC*, *supra*, 41 Cal.App.5th 729. We also disapprove *The Comedy Store v. Moss Adams LLP* (2024) 106 Cal.App.5th 784, review granted February 11, 2025, S288469, which followed *Handoush*, to the extent it is inconsistent with this opinion. We need not and do not consider the merits of *Wimsatt*, *America Online*, *Verdugo*, or similar cases involving potentially unwaivable substantive rights.

Corporation's certificate of incorporation and bylaws. Plaintiff argues that the forum selection clause "was not freely and voluntarily negotiated at arm's length" and is therefore unenforceable. Plaintiff made this argument in the trial court, but the court did not consider it because it found the clause unenforceable for other reasons. Defendants' petition for writ of mandate in the Court of Appeal contended the clause was enforceable notwithstanding its manner of adoption. They relied in part on *Drulias v. 1st Century Bancshares, Inc.* (2018) 30 Cal.App.5th 696, 707–710, which considered the enforceability of a forum selection clause under similar circumstances. Plaintiff's return to the writ petition focused on its right to a jury trial, and it did not address the manner of the clause's adoption. The Court of Appeal did the same. (*EpicentRx*, *supra*, 95 Cal.App.5th at p. 908.) Because the lower courts have not considered the import, if any, of the manner of the clause's adoption, we decline to do so in the first instance here.

## III. DISPOSITION

We reverse the judgment of the Court of Appeal and remand for further proceedings.

**GUERRERO, C. J.**

**We Concur:**

**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  EpicentRx, Inc. v. Superior Court

---

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 95 Cal.App.5th 890
**Review Granted (unpublished)**
**Rehearing Granted**

---

**Opinion No.** S282521
**Date Filed:** July 21, 2025

---

**Court:** Superior
**County:** San Diego
**Judge:** Timothy B. Taylor

---

**Counsel:**

Brown Neri Smith Khan, Todd A. Boock, Jill Ray Glennon; O'Hagan Meyer, David Davidson, Clint D. Robison and Angeli C. Aragon for Petitioners EpicentRx, Inc., Tony Reid, Bryan Oronsky, Franck Brinkhaus, Scott Caroen, Meaghan Stirn and Rajan Kumar.

Cooley, Shannon M. Eagan, Angela Dunning and Rebecca Tarneja for Petitioners InterWest Partners VIII, L.P., and Khaled Nasr.

Eimer Stahl, Robert E. Dunn and Brian Y. Chang for the Chamber of Commerce of the United States of America as Amicus Curiae on behalf of Petitioners.

No appearance for Respondent.

Engstrom Lipscomb & Lack, Walter J. Lack and Steven C. Shuman for Real Party in Interest.

Seth E. Mermin, David S. Nahmias and J. Nicole Antonuccio for the Berkeley Center for Consumer Law and Economic Justice, Consumers for Auto Reliability and Safety, California Association for Microenterprise Opportunity, East Bay Community Law Center, Impact Fund, Legal Aid at Work, Privacy Rights Clearinghouse and Public Justice as Amici Curiae on behalf of Real Party in Interest.

Gibson, Dunn & Crutcher, Russ Falconer, Angelique Kaounis, Daniel R. Adler and James A. Tsouvalas for Lockton Investment Advisors, LLC, Lockton Investment Securities, LLC, Lockton Companies, LLC – Pacific Series, and Lockton Partners, LLC, as Amici Curiae.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Clint D. Robison
O'Hagan Meyer
21650 Oxnard Street, Suite 530
Woodland Hills, CA 91367
(213) 306-1610

Russ Falconer
Gibson, Dunn & Crutcher LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
(214) 698-3170

Steven C. Shuman
Engstrom Lipscomb & Lack
11601 Wilshire Boulevard, 14th Floor
Los Angeles, CA 90025
(310) 552-3800